IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel, EUGENE MASON and PATRICK D. BROWN, | ) ) ) |
| Plaintiffs, | ) Case No. CV07-297-S-EJL ) |
| vs. | ) MEMORANDUM ORDER ) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

On July 6, 2007, Plaintiffs Eugene Mason and Patrick Brown ("Plaintiffs") initiated this action by filing a Complaint alleging that Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq* ("FCA"). The United States elected not to intervene in Plaintiffs' suit, and Plaintiffs are pursuing this action under 31 U.S.C. § 3730(b), which allows private citizens to bring claims for violations of the FCA.

Before the Court today is State Farm's Motion to Dismiss for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to plead fraud with specificity. See Fed. R. Civ. P. 12(b)(1), (6), and 9(b). If dismissal is appropriate, State Farm argues that Plaintiffs should not be given leave to amend the Complaint. In the alternative, State Farm moves to transfer venue to the Unites States District Court for the District of Illinois under 28 U.S.C. §1404(a).

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

MEMORANDUM ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs' Complaint charges State Farm with two separate violations of the FCA:

> 1) State Farm "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1), and
>
> 2) State Farm "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government." 31 U.S.C. § 3729(a)(7).

Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which confers jurisdiction in claims brought pursuant to 31 U.S.C. § 3730(b) for violations of the FCA.

The incident giving rise to Plaintiffs' claims occurred on October 6, 2003 when Plaintiff Eugene Mason ("Mason") was in an automobile accident. At the time of the accident, Mason had an insurance policy with State Farm that included coverage of medical payments up to $100,000 for reasonable medical expenses incurred as a result of the car accident. Due to Mason's age at the time, he also qualified for Medicare benefits.

Mason sought medical treatment for the injuries sustained in the accident and ultimately underwent spinal surgery on June 29, 2004. Dr. David Verst performed the surgery at St. Luke's Wood River Medical Center in Ketchum, Idaho. This facility is owned and operated by St. Luke's Medical Center ("St. Luke's").

Mason incurred medical bills associated with his medical care and spinal surgery, which State Farm disputed its duty to pay under Mason's policy. Mason hired Plaintiff Patrick Brown ("Brown") to assist him in obtaining coverage and, as part of Brown's efforts, Mason was examined by Dr. Edwin Clark to determine the extent of State Farm's financial liability. After the independent medical exam, Dr. Clark opined that State Farm was liable for sixty percent of Mason's medical treatment. State Farm agreed and began paying Mason's bills on April 20, 2005. State

MEMORANDUM ORDER

Farm paid Dr. Verst for some of his services, Gooding Memorial Hospital, and Dr. Lynn Berkebile.[1] However, State Farm did not pay the June 29, 2004 back surgery bill.

Plaintiffs learned that St. Luke's requested payment from Medicare for services rendered Mason between June 14, 2004 and June 30, 2004. On July 22, 2004, Medicare made a contingent payment to St. Luke's for those services.

In May and September of 2005, Brown requested documents from State Farm relating to the payments made on Mason's expenses. Sandy Wallace, State Farm's claims adjuster, sent Brown a list of all payments made on Mason's claim and internal State Farm documents of claims forms from various medical providers. None of these records referenced the June 29, 2004 surgery bill.

## STANDARD OF LAW

1. <u>Lack of Subject Matter Jurisdiction- Rule 12(b)(1)</u>:

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) in one of two ways. <u>See</u> <u>Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979)). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. <u>Id.</u> On the other hand, the defendant may instead launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." <u>Id.</u> A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989); <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." <u>Thornhill</u>, 594 F.2d at 733.

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction [pursuant to a "factual attack"] ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of

---

[1] Assumably some of Mason's other medical care providers. Plaintiffs' claims do not concern these payments.

jurisdiction is dependent on the resolution of factual issues going to the merits.'" <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987). "When a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction, rather than for failure to state a claim, is proper only when the allegations of the complaint are frivolous." <u>Id.</u> In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983).

State Farm moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction under Rule 12(b)(1). State Farm argues that federal subject matter jurisdiction is predicated upon a violation of the FCA, and that Plaintiffs cannot establish a factual basis for a violation of the FCA. State Farm has submitted an affidavit in support of its motion.

This is a factual attack made pursuant to Rule 12(b)(1) and, under normal circumstances, the court would be free to determine the existence of jurisdiction separate from the merits, including examining extrinsic evidence. However, where the facts supporting jurisdiction are the same facts the plaintiff must prove to win his case, the court should rule on the motion as one going to the merits of the claim pursuant to Rule 12(b)(6).

State Farm maintains that the jurisdictional issue is separable from the merits, and that the court may thus consider extrinsic evidence and attach no presumptive validity to Plaintiffs' allegations. A review of Plaintiffs' cause of action, however, demonstrates that the merits and jurisdictional facts are intertwined.

Jurisdiction is established under the FCA pursuant to 31 U.S.C § 3732 and 31 U.S.C. § 3730(b)(1), which state that any person may bring an action for a violation of § 3729. Section 3729 lays out the elements for a violation of the FCA. State Farm states that jurisdiction is lacking because there was no false claim and, even if there was, State Farm did not have knowledge of it. A false claim and knowledge are two of three elements needed to establish a violation of the FCA. Therefore, the substantive and jurisdictional elements are sufficiently intertwined for the Court to treat State Farm's motion to dismiss for lack of subject matter jurisdiction as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

MEMORANDUM ORDER

2. <u>Failure to State a Claim- Rule 12(b)(6)</u>:

In considering a motion to dismiss pursuant to Rule 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. <u>See</u> <u>Gilligan v. Jamco Dev. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims." <u>Id.</u> (citations omitted). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see also</u> <u>Hicks v. Small</u>, 69 F.3d 967, 969 (9th Cir. 1995). Under a Rule 12(b)(6) motion, factual challenges to a complaint have no bearing on the legal sufficiency of the allegations. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).

## DISCUSSION

1. <u>Failure to State a Claim under Rule 12(b)(6)</u>:

a. <u>Count 1:</u> 31 U.S.C. § 3729(a)(1)- Knowingly making, or causing to be made, a false or fraudulent claim for payment from the government.

State Farm supports its motion to dismiss Count One arguing the Complaint fails to show that State Farm caused St. Luke's to submit a false claim, that the alleged claim was false or fraudulent, and that State Farm had knowledge of the "false" claim.

A defendant violates § 3729(a)(1) of the FCA when he "knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment..". 31 U.S.C. § 3729(a)(1). To state a claim, a plaintiff must allege: 1) that the defendant presented or caused to be presented a claim for payment to any agent of the United States, 2) the claim was false or fraudulent, and 3) the defendant knew or should have known that it was

false or fraudulent.  <u>See</u> 31 U.S.C. §3729(a); <u>United States v. Mackby</u>, 261 F.3d 821, 826 (9th Cir. 2001).

      i.  **Whether Plaintiffs' Complaint alleges that State Farm presented or caused to be presented a claim for payment to the United States**.

      All agree that State Farm did not make a false claim to the government.  Rather, Plaintiffs allege that State Farm caused St. Luke's to submit the false Medicare claim by denying liability and refusing to pay Mason's medical bills.  (Compl. ¶30).  Allegedly, this denial of liability caused St. Luke's to seek payment for Mason's expenses from his secondary insurer, Medicare. State Farm argues that it could not have caused St. Luke's to submit a false claim because State Farm was not aware of its alleged liability for Mason's bill.

      A false claim may be presented indirectly to the government and liability may be imposed on defendants who have no direct contact with the government, provided that the defendants knowingly assisted in causing the submission of the false claim.  <u>United States v. Bornstein</u>, 423 U.S. 303,313 (1976); <u>United States <i>ex rel.</i> Marcus v. Hess</u>, 317 U.S. 537 (1943).  Assessing the causation requirement under the FCA, courts have used a proximate cause test to establish liability. <u>See</u> <u>Bornstein</u>, 423 U.S. at 313 (reasoning that if a defendant had not engaged in the activity, then the third party would not have occasion to submit the false claim, and no liability attaches);  <u>United States v. McLeod</u>, 721 F.2d 282, 284 (9th Cir. 1983) (using proximate cause to determine defendant's FCA liability for third party's claims); <u>United States v. Eghbal</u>, 475 F.Supp.2d 1008 (C.D.Cal. 2007) (reasoning that a 'but for' test is sufficient to establish a causal relationship between a false claim and the government's damages).

      If Plaintiffs' Complaint alleges facts showing a causal connection between State Farm's failure to pay Mason's surgery bill in June, 2004, and St. Luke's submitting the bill to Medicare for reimbursement, then the requisite causal link is present.  Put another way, the Complaint must allege facts that but for State Farm's failure to pay Mason's surgery bill in early July of 2004, then St. Luke's would not have submitted the bill to Medicare for payment in July, 2004.

Plaintiffs' Complaint alleges the following facts to establish causation. On October 6, 2003, Mason was in an automobile accident which resulted in injuries. (Compl. ¶ 15). Mason's coverage with State Farm obligated it to pay up to $100,000 for all reasonable medical bills as a result of the car accident. (Compl. ¶ 15). On June, 29, 2004, Mason underwent a back surgery performed at St. Luke's by Dr. Verst. (Compl. ¶ 17). In 2004, St. Luke's requested payment from Medicare for services rendered Mason between June 14, 2004 and June 30, 2004. (Compl. ¶ 22). On July 22, 2004, Medicare made a contingent payment of $11,216.93 to St. Luke's for those services. Id. State Farm knew that Mason had the back surgery and was aware that it had not paid St. Luke for the surgery.[2] (Compl. ¶ 23). State Farm refused to pay Mason's medical bills until 2005. (Compl. ¶ 20).

Because the Complaint fails to allege if and when State Farm actually received a surgery bill or that it refused to pay it, the Complaint fails to allege a cause and effect relationship necessary to make out a claim under the FCA. Plaintiffs must allege facts showing that State Farm received notice of the bill and that it denied liability before St. Luke's billed Medicare to raise an inference that this denial caused St. Luke's to seek payment from Medicare.

**ii. Whether the claim made by St. Luke's was "false" or "fraudulent."**

To satisfy the second requirement of § 3729(a)(1), the claim made by St. Luke's to Medicare must be "false" or "fraudulent" within the meaning of the FCA. State Farm contends that the claim was not fraudulent because St. Luke's had a statutory right under the Medicare regulations to submit a bill to Medicare for Mason's bills. Plaintiffs argue the claim was fraudulent because State Farm was primarily liable for Mason's expenses, and any request for payment of those covered expenses from Medicare would be fraudulent. See Compl. ¶ ¶ 15, 19.

Under the FCA, a claim "includes any request or demand...for money..if the United States Government provides any portion of money which is requested or demanded." 31 U.S.C. § 3729(c). "False or fraudulent" is not defined in the FCA, but courts construing the terms have interpreted a false or fraudulent claim as "one aimed at extracting money the government would not have

---

[2]The Complaint is unclear when exactly State Farm had this knowledge. The Complaint only alleges that State Farm possessed an invoice from Dr. Verst dated June 30, 2004.

otherwise paid." <u>Mike v. Straus</u>, 274 F.3d 687, 696 (2d Cir. 2001); see also <u>United States v. Neifert-White Co.</u>, 390 U.S. 228, 232-33 (1968) (finding false claims an attempt to cause the Government to pay out sums of money); <u>United States <em>ex rel.</em> Hopper v. Anton</u>, 91 F.3d 1261, 1267 (9th Cir. 1996) (finding fraud when knowingly presenting a claim to get money not otherwise entitled to).

"Although the FCA was not designed to reach every kind of fraud practiced on the government, it was intended to embrace at least some claims of legal falsehood." <u>United States v. McNinch</u>, 356 U.S. 595, 599 (1958).  However, violations of laws, rules, or regulations alone do not create a false claim under the FCA. <u>Hopper</u>, 91 F.3d at 1266.  The FCA is much narrower and requires the regulatory violation to be accompanied by a knowingly false or misleading representation. <u>Id.</u>  This false or misleading representation must have influenced the government's decision to pay. <u>Neifert-White</u>, 390 U.S. at 232.

A claim can also be "false" within the meaning of the FCA when it complies with the applicable statute or regulation, but where false information was used to receive the benefit. <u>See United States v. Mackby</u>, 261 F.3d 821, 826 (9th Cir. 2001) (holding defendant liable for using false group name to receive otherwise correct Medicare benefits); <u>Peterson v. Weinberger</u>, 508 F.2d 45, 52 (5th Cir. 1975) (holding defendant liable under the FCA although services billed to Medicare were performed by qualified people, where the claim forms falsely certified that the defendant was the provider).

To meet their burden on this element, Plaintiffs must allege that the claim submitted by St. Luke's to Medicare in July 2004, was an attempt to get Medicare funds that St. Luke's was otherwise not entitled to receive or, that the claim contained false statements or misrepresentations in order to receive the Medicare payment.  The Complaint fails to do this.

The Medicare Secondary Payer ("MSP") Statute governs the validity of St. Luke's claim to Medicare. 42 U.S.C. § 1395(y)(b).  In 1980, Congress amended the MSP to make Medicare the secondary, rather than primary insurer for eligible parties, and gave Medicare the power to recoup payments from primary insurers. <u>United States v. Baxter International, Inc.</u>, 345 F.3d 866, 875 (11th Cir. 2003).  Under the MSP, if payment is expected by the primary insurer, then Medicare is

not expected to pay.  42 U.S.C. § 1395(y)(b)(A).  However, if payment by the primary insurer is not expected promptly, then medical providers may request a contingent payment for covered services, even when another source is obligated to pay.  42 U.S.C. § 1395(y)(b)(B).  Promptly is defined to mean "payment within 120 days after receipt of a claim." 42 C.F.R. § 411.21.  The MSP makes clear that St. Luke's is entitled to request a contingent payment from Medicare, even where State Farm is primarily liable.

Furthermore, the Complaint does not allege that St. Luke's used false or misleading representations in order to receive the payment.  Because Medicare sent St. Luke's a contingent payment, one can infer that St. Luke's correctly billed Medicare as the secondary insurer under the MSP rather than the primary.  And, because the Complaint alleges that State Farm contested Mason's medical bills, an inference could be made that St. Luke's did not expect payment within 120 days, making the request allowable.

 If Plaintiffs can allege that St. Luke's misrepresented the facts to Medicare in order to receive the contingent payment, then a false claim within the meaning of the FCA may be present.  However, the fact that St. Luke's requested payment from Medicare, did so ostensibly in compliance with the MSP, and where Plaintiffs have not shown that St. Luke's used false information to receive the payment, means that the false claim element has not been adequately pled.

**iii.  Whether State Farm knew, or should have known, that a false or fraudulent was submitted to Medicare.**

Lastly, to prove liability under § 3729(a)(1), State Farm must have knowingly caused St. Luke's to submit the false claim to Medicare.  State Farm contends that it did not knowingly cause St. Luke's to submit the false claim because State Farm's alleged liability for the medical bill was in dispute and, since it had no actual knowledge of the surgery bill, there can be no "knowing" falsity under the FCA.  Plaintiffs contend that State Farm had specific knowledge of its liability or, at the very least, it should have known.

Knowledge is established by proving that the defendant: 1) has actual knowledge that his actions caused a false claim to be submitted, 2) acts in deliberate ignorance of the fact that a false

MEMORANDUM ORDER
08ORDERS\STATE_FARM

claim was submitted, or 3) acts in reckless disregard of the truth or falsity of the claim.   31 U.S.C. § 3729(b).   No specific intent to defraud is required.   Id.   Rather, "the requisite intent is a presentation of what is known to be false."   United States ex rel. Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996) (Hagood II).   Known to be false means a lie was knowingly used to receive payment from the government.   Wang v. FMC Corp., 975 F.2d 1412, 1420 (9th Cir. 1992).   Innocent mistakes and mere negligence alone do not satisfy the knowledge requirement.   Id.   Furthermore, a disputed legal question does not satisfy the knowledge element.  United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991) (holding defendant not liable where liability was in question in light of an imprecise and discretionary statute) (Hagood I).

When a defendant deliberately ignores information that would have stopped the claim from being submitted, even where the information is true, the defendant has the requisite knowledge to impose liability.   See United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1053 (9th Cir. 2001) ( knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under § 3729).   This constructive knowledge element recognizes that if a defendant fails to inform himself of information that he should have known under the circumstances, then he may be liable under the FCA.   Mackby, 261 F.3d at 828.

For the Complaint to meet the knowledge element, Plaintiffs must allege facts showing that State Farm had the surgery bill and did not pay it knowing this would cause St. Luke's to bill Medicare.   Or, if State Farm did not have specific knowledge of the bill, that State Farm recklessly ignored information that would have given it knowledge.

The Complaint alleges the following facts regarding State Farm's knowledge of a fraudulent claim.   State Farm disputed its duty to pay Mason's medical bills throughout 2004 and did not begin paying the bills until 2005. (Compl. ¶¶ 18, 20).   State Farm was also aware that Mason had surgery performed at St. Luke's (based on Dr. Verst's invoice), knew it had not paid for these services, nor reimbursed Medicare for the contingent payment to St. Luke's. (Compl. ¶ 23).   State Farm knew that Mason was a Medicare beneficiary. (Compl. ¶ 26).

MEMORANDUM ORDER

The Complaint fails to show that State Farm knowingly caused St. Luke's to bill Medicare for Mason's surgery.  First, even if the alleged facts permit the inference that State Farm knew of its obligation to pay the surgery bill,[3] because State Farm contested its obligation to pay Mason's bills, knowledge is lacking.  By contesting liability, the falsity of the information relied on to get the Medicare payment had not been established, and as such, State Farm could not have knowingly used "false" information to cause St. Luke's to submit the bill.

Second, the alleged facts do not support Plaintiffs' argument that State Farm deliberately ignored the surgery bill and acted with reckless disregard by not enquiring into the bill's existence. Unlike the defendant in Mackby, where the Ninth Circuit found a defendant liable for ignoring information and failing to inform himself of his obligation, no facts support the allegation that State Farm had an affirmative duty to seek out bills it may be liable for.  Mackby, 261 F.3d at 828.  In Mackby, the defendant acted with reckless disregard because, as a doctor whose  patients qualified for Medicare, Mackby failed to inform himself of what was required of him under the Medicare guidelines.  Id.  The court reasoned that because he should have known what was required of him, he could be liable for knowledge of false claims not in compliance with the Medicare requirements. Id.

Here, Plaintiffs have not shown that State Farm deliberately ignored a surgery bill or that it acted with reckless disregard.  No alleged facts support the inference that State Farm had an affirmative duty to find out if Medicare had been billed for services rendered to Mason.  As such, State Farm would not have been acting with reckless disregard in ignoring the information.[4]

On Count One, the Complaint fails to state a claim under §3729(a)(1) of the FCA.  The Complaint fails to allege a chain of causation linking State Farm to St. Luke's submission of a claim.  The Complaint fails to allege that the claim submitted to Medicare involved the use of false information or lies.  The Complaint fails to show that State Farm acted with deliberate ignorance

---

[3] The Complaint only alleges that State Farm possessed Dr. Verst's invoice, but does not allege when State Farm actually received it.

[4] Plaintiffs also argue that because State Farm acted in a grossly negligent manner by not inquiring into what its duties were under the circumstances, a question of fact exists, which must be decided by the jury.  However, like the reckless disregard claim, stating that State Farm was grossly negligent without supplying supporting facts is insufficient to state a claim.

or that it knowingly caused the claim to be submitted within the meaning of the FCA.  Based on the foregoing, State Farm's  motion to dismiss Count One for failure to state a claim is granted.

b. Count 2:  31 U.S.C. § 3729(a)(7)- Knowingly makes, uses, or causes a false record or statement to avoid an obligation to pay money to the government.

State Farm moves to dismiss Count Two arguing that the Complaint fails to allege a violation of § 3729(a)(7).  Specifically, State Farm contends that Plaintiffs have failed to show that State Farm used false statements in an effort to avoid an obligation it may have owed the government.

A defendant violates § 3729(a)(7) of the FCA when he "knowingly makes..or uses..a false record or statement to conceal, avoid, or decrease an obligation to pay..the government." 31 U.S.C. § 3729(a)(7).  This section prohibits "reverse false claims," claims made by parties who owe money to the government for services or benefits, rather than claims made by parties seeking benefits. United States _ex. rel_. Huangyan Import & Export Corp.v. Nature's Farm Products, Inc., 370 F.Supp.2d 993 (N.D.C. 2005). In order to establish a violation under § 3729(a)(7), a  plaintiff must show that: 1) an existing obligation was owed the government at the time the fraudulent statements were made, and 2) there is a causal connection between the false statements and the loss incurred by the government.  31 U.S.C. § 3729(a)(7).  A defendant must have made the false statements in a knowing attempt to avoid its duty.  31 U.S.C. § 3729(a)(7) and (b).

To support its motion to dismiss Count Two, State Farm renews its contention that St. Luke's claim to Medicare was not false or fraudulent.  However, § 3729(a)(7) seeks to address those avoiding repayment to the government, rather than those submitting false or fraudulent claims.  31 U.S.C. § 3729(a) (1-7) (unlike other subsections, subsection (7) does not include the term "claim"); Neifert-White, 390 U.S. at 233 (stating the FCA goes to all fraudulent *attempts* to cause the government to lose money) (emphasis added);  Nature's Farm, 370 F.Supp.2d at 998 (stating Congress amended the FCA to include "reverse false claims" because, as written, the FCA only addressed affirmative demands on the treasury, but omitted those seeking to avoid payment).  What is dispositive for a "reverse false claim" is that false *statements* were made, in an effort to avoid an

obligation *already owed the government*.  A fraudulent claim need not have been submitted.  See Nature's Farm., 370 F.Supp.2d at 996.

### i.  Whether State Farm made false statements when it owed an existing obligation to reimburse Medicare.

Reverse false claims require false statements made while there is an existing obligation to repay the government, which is created by statute, regulation or contract.  American Textile Manufacturers Inst., Inc., v. The Limited, Inc., 190 F.3d 729 (6th Cir. 1999); United States v. Q Int'l Courier, Inc., 131 F.3d 770 (8th Cir. 1997);  Nature's Farm, 370 F.Supp.2d at 996.  A plaintiff must show the obligation owed is mandatory, rather than discretionary.  Nature's Farm, 370 F.Supp. 2d at 1000.  To meet this element, the Complaint must allege that State Farm had a mandatory duty to reimburse Medicare and that State Farm made false statements while this duty was in existence.

State Farm's alleged obligation to reimburse Medicare arises, if at all, pursuant to the MSP. "[A] primary plan...shall reimburse the appropriate Trust Fund for any [contingent payment]..if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to the item or service."  42 U.S.C. § 1395y(2)(B)(ii).  "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release..of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."  Id.

The Complaint sufficiently pleads this element.  Plaintiffs allege that State Farm is liable for reimbursing Medicare because State Farm was responsible under the insurance policy for all reasonable medical expenses incurred by Mason and, because State Farm agreed to pay the surgery bill as a result of the independent medical exam.  (Compl.  ¶¶ 15, 19).

This duty is similar to the duty imposed in Nature's Farm, where the court held that FCA defendants had an existing obligation to pay import taxes which they were avoiding. 370 F.Supp.2d at 1000.  Distinguishing from other cases where courts have found no obligation existed, the Nature's Farm court found the duty imposed by import regulations was mandatory, thus meeting the FCA's "existing obligation" element.  Id.  Other courts have held that when there is no statute or regulation specifically conferring an obligation to pay the government or when a statute's duty

to pay is discretionary, there is no existing obligation.  See United States *ex rel.* Bain v. Georgia Gulf Corp., 386 F.3d 648 (5th Cir. 2004) (finding penalties under Clean Water Act did not qualify for FCA liability because penalties are discretionary); Q Int'l Courier, 131 F.3d  at 773 (finding no statute or regulation conferred on defendants a duty to pay).

Here, like Nature's Farm where the government imposed an import tax on defendants pursuant to regulations, State Farm also had a duty imposed on it by statute to reimburse Medicare. Because the statute specifically mandates repayment where liability is demonstrated and  does not use discretionary language (MSP uses the term "shall"), Plaintiffs have alleged that State Farm had an exiting duty to reimburse Medicare sufficient to trigger a reverse false claim.[5]

State Farm maintains it had no obligation to reimburse Medicare for the contingent payment it made to St. Luke's.  This contention is based on the premise that Plaintiffs had a duty to tell St. Luke's that State Farm was the primary insurer for services rendered at St. Luke's and that Plaintiffs had a duty to assist Medicare in obtaining payment from State Farm.  State Farm cites  42 C.F.R. Section 411.51(a), which states that the beneficiary is responsible for taking whatever action is necessary to obtain payment that can reasonably be expected under no-fault insurance.

However, Plaintiffs have pled facts to meet the existing obligation element.  Plaintiffs' duty to help seek reimbursement is not dispositive as to whether State Farm owes an obligation to Medicare.  Under the MSP, the obligation to reimburse Medicare arises when a primary insurer is demonstrated liable, not when it is informed of its duty to pay.  42 U.S.C. §1395(y)(2)(B)(i). Additionally, pursuant to the MSP, if the primary insurer does not reimburse Medicare, then the government has significant power under the MSP to recoup conditional Medicare payments from primary sources.  42 U.S.C. §1395(y)(2)(B)(iii); see Baxter, 345 F.3d at 877 (stating that Congress has repeatedly clarified and augmented the Government's power, as the primary enforcer, to recover contingent payments).  Because the obligation to pay arises by statute, and because Congress has specifically given the government authority to enforce the MSP, Plaintiffs' lack of action has no bearing on whether State Farm owes an obligation to Medicare.

---

[5] The Court expresses no opinion on whether State Farm is actually liable to reimburse Medicare under the MSP.  The Court only finds that the Complaint alleges sufficient facts that allow the inference to be made.

MEMORANDUM ORDER
08ORDERS\STATE_FARM                               14

The Complaint further satisfies the existing obligation requirement by alleging two false statements: 1) the list of payments made by State Farm on Mason's medical claim, dated May 2005, and 2) copies of internal State Farm records detailing various claims from medical providers, dated September 2005.  (Compl. ¶¶ 22, 24).  They were made after State Farm's duty to reimburse Medicare arose and they are allegedly false because State Farm did not provide the St. Luke's surgery bill or acknowledge its duty to pay it under Mason's policy. (Compl. ¶ 24).  In so doing, State Farm misrepresented the facts.  See Wang, 975 F.2d at 1421 (finding "false" means misrepresenting facts).

This is similar to Nature's Farm, where the court held that customs forms omitting the correct country of origin were false statements under the FCA.  370 F.Supp.2d at 999.  Here, by supplying records to Plaintiffs that fail to acknowledge an obligation that State Farm is allegedly liable for, the Complaint shows that State Farm sufficiently misrepresented the facts to plead this element of the FCA.

It should be noted that Plaintiffs allege a third false statement, St. Luke's claim to Medicare in 2004 for the contingent payment.  However, this "false statement" does not qualify to state a reverse false claim for two reasons.  First, as previously discussed, Plaintiffs have not alleged facts showing that St. Luke's claim to Medicare in 2004 was false.[6]  Second, the claim to Medicare was made before State Farm had a duty to reimburse Medicare, it could not have been made when an existing obligation was owed.[7]

---

[6] Plaintiffs failed to show how St. Luke's misrepresented the facts to Medicare in order to get the contingent payment.

[7] In support of its motion to dismiss, State Farm argued, in part, that Count Two should be dismissed because the Complaint fails to allege false statements were made when an existing obligation was owed the government.  State Farm specifically states that St. Luke's claim to Medicare in 2004 could not be a "false statement" because it was made before the duty to pay arose.  State Farm is correct on this point.  However, as discussed, State Farm made statements in 2005 that were said when it owed an obligation to reimburse Medicare, so State Farm's argument on this point fails.

MEMORANDUM ORDER
08ORDERS\STATE_FARM                                    15

**ii. Whether State Farm's alleged false statements caused the government to not be reimbursed.**

To state a reverse false claim, a defendant's false statement must have caused the government to lose money. State Farm argues that any alleged statements could not have caused Medicare to lose money because the false statements were directed at Plaintiff Brown, not Medicare or St. Luke's. State Farm also argues that it did not know of its duty to pay Medicare, and thus could not have been avoiding its duty.

A defendant's false statements need not be directed at the government to establish liability. Allison Engine Co., Inc., v. United States *ex rel.* Sanders, 128 S.Ct. 2123 (2008). However, in these cases, liability is only established when a plaintiff can demonstrate a causal connection between the false statements and the government not receiving payment. See Hopper, 91 F.3d at 1266 (finding false statements did not trigger government loss because the statements were not used by government to make payments); (United States *ex rel*. Koch v. Koch Indust., Inc., 57 F. Supp. 2d 1122, 1129 (N.D. Okla. 1999) (finding that false statements on oil leases, which were not given to the government, nonetheless caused the government to lose money because the oil leases were used to reduce money owed the government); United States *ex rel.* Thompson v. Columbia/HCA Healthcare Corp., 20 F.Supp.2d 1017, 1049 (S.D. Tex. 1998) (holding claim sufficiently pled when alleged false statements were used to avoid an obligation to pay money to United States). These cases make clear that a false statement alone will not trigger a reverse false claim. Rather, a defendant must have made the false statement for the purpose of avoiding payment. Allison Engine Co.,128 S.Ct. at 2130. Here, to sufficiently plead a violation of the FCA, Plaintiffs must allege facts showing that State Farm said the false statements to Plaintiffs in order to avoid repaying Medicare and that this was done knowingly.

Plaintiffs' Complaint fails to allege facts to plead this element. First, the Complaint fails to show that State Farm knew of its duty to reimburse Medicare. As such, any false statements by State Farm could not have been knowingly said in order to avoid payment.

Knowledge exists when a defendant actually knew or should have known, but deliberately ignores information that would have otherwise informed him of his duty.  SmithKline, 245 F.3d at 1053.  The Complaint alleges that State Farm knew that Mason's surgery was performed at St. Luke's, that State Farm was liable for the bill, and did not to pay it.  (Compl. ¶ 25).  The Complaint also alleges that State Farm knew that Medicare was an insurance provider for Mason and that State Farm did not reimburse Medicare the amount it owed.  Id.  Nowhere does the Complaint allege that State Farm actually knew that St. Luke's billed Medicare for Mason's surgery or that Medicare made a contingent payment.  Knowledge that Mason is a Medicare beneficiary and that State Farm might be liable for Mason's surgery, does not equate to knowledge that Medicare payed for a specific surgery.  Additionally, as previously discussed, the alleged facts also do not support the inference that State Farm should have known that St. Luke's billed Medicare for the surgery but deliberately ignored the information.[8]  Thus, the Complaint fails to allege that State Farm has the requisite knowledge to trigger FCA liability.

Additionally, the Complaint fails to show how State Farm's statements caused the government to not be reimbursed.  State Farm allegedly made false statements to Plaintiff Brown by omitting its liability for the surgery.  However, the connection between the alleged false statements to Brown and State Farm failing to pay Medicare is lacking.  Without facts alleging that Brown used the statements to allow State Farm to avoid payment, State Farm's "false statements" alone are insufficient to state an FCA violation.  Allison Engine Co., 128 S.Ct. at 2130, Hopper, 91 F.3d at 1266; Koch, 57 F.Supp.2d at 1129.

The Ninth Circuit has addressed the causation requirement.  In Hopper, the court found that a plaintiff had failed to state an FCA claim when she could not show that the government used the false statements to distribute a benefit.  91 F.3d at 1266.  In Hopper, a school provided false certifications to the government in order to receive funds for special education.  Id.  The Ninth

---

[8] This case is unlike Mackby, where the Ninth Circuit found a doctor had the requisite knowledge under the FCA because he failed to inform himself of his duties pursuant to the Medicare regulations. 261 F.3d at 828. Here, there are no alleged facts, nor inferences that lead to the conclusion that State Farm had a duty to seek out claims it might owe, but has not been informed of.

MEMORANDUM ORDER

Circuit reasoned that because the government did not use the false certifications to pay out special educations funds, no FCA claim existed.  Id.

An Oklahoma district court has specifically addressed whether false statements caused the government to loose money in a reverse false claim.  See  Koch, 57 F.Supp.2d at 1129.  In Koch, the court found that defendants' false statements could have caused the government to lose money.[9] Id.  The Koch defendants had no contractual relationship with the government and the false lease information was not given to the government.  Id.  However, the defendants did have to pay the government for oil drilled on government land .  Id.  The court reasoned that the false information on the oil leases could cause the government to lose money because some of the leases were on government property, and thus, any information provided on the oil leases would likely get back to the government to calculate a payment owed.  Id.

Here, unlike, Koch, there are no alleged facts that State Farm's letter or list of claims to Plaintiff Brown in 2005 would cause Medicare to not be reimbursed.  State Farm merely failed to state that it may be liable for the St. Luke's surgery bill.  This statement was made to Brown when he asked for information on the claims paid under Mason's policy.  This is unlike the misstated oil leases in Koch because, the information in the statements is not likely to be used to reduce an obligation owed the government, and it is unclear how the statements could be used to avoid payment.  Plaintiffs' allegations fail to establish how an omission of liability to a third party is likely to cause Medicare to not be reimbursed.

On Count Two, Plaintiffs have alleged facts showing that false statements were made when State Farm had an existing obligation to reimburse the government.  However,  the Complaint fails to satisfy the knowing and causation requirements of § 3729(a)(7). Therefore, Defendant's motion to dismiss Count Two for failure to state a claim is granted.

2.  Failure to plead fraud with specificity under Rule 9(b):

State Farm has also asked this Court to dismiss both claims for failure to plead fraud with specificity as required by Rule 9(b).  State Farm contends that because the FCA is a fraud statute,

---

[9] The false statements in Koch occurred when the defendants misstated the amount of oil drilled on oil leases, some of which were on government property.  Koch, 57 F.Supp. 2d at 1124.

Rule 9(b) requires that all alleged acts of fraud be stated with particularity.[10] Plaintiffs respond with three arguments.  First, Rule 9(b) does not apply to reverse false claims because the FCA is different than the common-law fraud Rule 9(b) is meant to address.  Second, if Rule 9(b) applies to FCA claims, Plaintiffs are entitled to relaxed pleading requirements because the matters are specifically within the opposing party's knowledge.  And third, even if heightened pleadings are required, the Complaint has satisfied them.

It is generally accepted that Rule 9(b) applies to FCA claims.  See Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (holding that requirements of Rule 9(b) apply to FCA claims because it is an anti-fraud statute).  To comply with Rule 9(b), the allegations of fraud must be "specific enough to give defendants notice of particular misconduct which is alleged to constitute a fraud." Id. (citation omitted).  Mere conclusory allegations of fraud are insufficient. SmithKline, 245 F.3d at 1052.  However, a lenient application of Rule 9(b) is allowed "in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." See Id. (finding lenient application not applicable where plaintiff had access to facts evidencing corporation's FCA violation because plaintiff worked at the corporation and had knowledge of allegedly false tests).  In such cases, a complaint based on information and belief is sufficient if it includes a statement of facts upon which the belief is based. Zatkin v. Primuth, 551 F.Supp. 39, 42 (D.C.Cal. 1982).

Courts addressing whether FCA claims were pled with sufficient particularity have held that a plaintiff cannot merely describe a private scheme in detail and then allege simply, and without stated reason for his belief, that alleged scheme constituted a knowing fraud. See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 727 (10th Cir. 2006) (holding plaintiff's claim based on information and belief insufficient for lacking allegations to show the causation element to be anything beyond conjecture); United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1311 (11th Cir. 2002).

---

[10] Rule 9(b) states that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Because the Court finds that Plaintiffs have failed to state a claim under Rule 12(b)(6), the Court also finds that Plaintiffs have failed to plead the alleged facts of fraud with particularity. Furthermore, under the relaxed pleading requirements, Plaintiffs' Complaint fails.  Plaintiffs must still provide facts showing a strong inference of knowing fraud on State Farm's part.  See Sikkenga, 472 F.3d at 727 (finding insufficient a detailed plan without specifically alleged facts making out the elements of an FCA claim).  Here, like the plaintiff in Sikkenga who failed to plead fraud with specificity under the lower standard, Plaintiffs have outlined a plan of fraud on State Farm's part, but have failed to make out the elements of causation or knowledge necessary to state a claim or, to state facts on which this belief is based.   Plaintiffs  do not satisfy Rule 9(b)'s pleading requirements for either Counts of the Complaint.

3.  Whether leave to amend should be granted:

State Farm argues that if the Court finds that Plaintiffs have failed to state a claim, then leave to amend the Complaint should not be granted because amendment would be futile.  Plaintiffs contend that if the is Complaint lacking, that they should be granted leave to amend.

Rule 15(a)(2) states that leave to amend should be freely granted when "justice so requires." Fed. R. Civ. P. 15(a)(2).  Ordinarily, this means that leave to amend should be granted unless the court determines that the "pleading could not possibly be cured by the allegation of other facts." SmithKline, 245 F.3d at 1052.

The Court finds that Plaintiffs should be given  leave to amend their Complaint because there is some possibility that the Complaint can be cured with the allegation of other facts.[11]

### ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** as follows:

1) State Farm's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 19) is **DENIED**.

---

[11] The Court expresses no opinion as to whether facts exist to support Plaintiffs' claims.

2) State Farm's Motion to Dismiss for Failure to State a Claim (Dkt. No. 19) and State Farm's Motion to Dismiss for Failure to Plead Fraud with Specificity (Dkt. No. 19) are **GRANTED** without prejudice and with leave to amend.

3) State Farm's Motion to Transfer Venue (Dkt. No. 19) is **DENIED** without prejudice.

4) Plaintiffs' First Amended Complaint, if any, shall be filed no later than August 25, 2008. Failure to timely file a First Amended Complaint will result in dismissal of this action without further notice.

DATED:  **July 23, 2008**

Honorable Edward J. Lodge
U. S. District Judge