IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel, EUGENE MASON and PATRICK D. BROWN, ) ) ) Plaintiffs, ) ) vs. ) ) STATE FARM MUTUAL AUTOMOBILE ) INSURANCE COMPANY, ) ) Defendant. ) ) | Case No. CV07-297-S-EJL  MEMORANDUM ORDER |

On July 6, 2007, Plaintiffs Eugene Mason and Patrick Brown ("Plaintiffs") initiated this action by filing a Complaint alleging that Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq* ("FCA"). The United States elected not to intervene in Plaintiffs' suit. The Plaintiffs are pursuing this action under 31 U.S.C. § 3730(b), which allows private citizens to bring claims for violations of the FCA. State Farm filed a motion to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud with specificity.[1]  (Dkt. Nos. 19).  On July 23, 2008, the Court granted the motion as to the failure to state a claim but granted the Plaintiffs leave to file an amended complaint. (Dkt. No. 24). Plaintiffs filed their amended complaint to which State Farm has filed a second motion to dismiss for failure to state a claim. (Dkt. Nos. 25, 27).

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

---

[1] State Farm also moved to transfer venue to the Unites States District Court for the District of Illinois under 28 U.S.C. §1404(a). (Dkt. No. 19). The Court denied that motion. (Dkt. No. 24).

MEMORANDUM ORDER
S:\Orders\Orders09\State_Farm_dismiss.wpd            1

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs' Amended Complaint charges State Farm with two separate violations of the FCA:

1) Count One: State Farm "knowingly and intentionally caused false claims for payment to be submitted to the United States for payment from Medicare program funds when the payment should have been made by State Farm under the terms of the insurance policies issued to individuals who also qualify for Medicare beneficiaries." 31 U.S.C. § 3729(a)(1).

2) Count Two: State Farm was "the primary insurer and made or used a false statement or record to conceal or avoid its obligation to pay a claim and allowed such claims to be paid by Medicare, or concealed or avoided its obligation to reimburse Medicare for payments made [constituting] an indirect reverse false claim." 31 U.S.C. § 3729(a)(7).

(Dkt. No. 25). The claims arise from the payment of medical bills incurred by Mr. Mason for injuries suffered in an automobile accident on October 6, 2003. At the time of the accident, Mason had an insurance policy with State Farm that he claims included coverage of medical payments up to $100,000 for reasonable medical expenses incurred as a result of the car accident. Due to Mr. Mason's age at the time, he also qualified for Medicare benefits. Mr. Mason sought medical treatment for the injuries sustained in the accident and ultimately underwent spinal surgery on June 29, 2004. Dr. David Verst performed the surgery at St. Luke's Wood River Medical Center in Ketchum, Idaho. This facility is owned and operated by St. Luke's Medical Center ("St. Luke's"). Mr. Mason incurred medical bills associated with his medical care and spinal surgery, which State Farm disputed its duty to pay under Mr. Mason's policy. St. Luke's submitted a claim requesting payment from Medicare for services rendered to Mr. Mason between June 14, 2004 and June 30, 2004. On July 22, 2004, Medicare made a contingent payment to St. Luke's for those services.

Mr. Mason hired Plaintiff Patrick Brown ("Brown") to assist him in obtaining coverage from State Farm. As part of Mr. Brown's efforts, Mr. Mason was examined by Dr. Edwin Clark to determine the extent of State Farm's financial liability. After the independent medical exam, Dr. Clark opined that State Farm was liable for sixty percent of Mr. Mason's medical treatment. State Farm agreed and began paying Mr. Mason's bills on April 20, 2005. State Farm paid Dr. Verst for some of his services, Gooding Memorial Hospital, Dr. Lynn Berkebile, and presumably other

medical care providers payments to whom the Plaintiffs' claims here do not apply. The Plaintiffs' complaint here relates to the 2004 St. Luke's bill that was submitted to and paid by Medicare.

In May and September of 2005, Mr. Brown requested documents from State Farm relating to the payments made on Mr. Mason's expenses. Sandy Wallace, State Farm's claims adjuster, sent Mr. Brown a list of all payments made on Mr. Mason's claim and internal State Farm documents of claims forms from various medical providers. None of these records referenced St. Luke's bill. As a result, the Plaintiffs filed the instant action to recover damages and civil penalties on behalf of the United States of America (the "government") under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging State Farm has avoided its legal obligation to pay under its insurance policy and to reimburse Medicare for its payment of the St. Luke's bill. (Dkt. No. 25).

## STANDARD OF LAW

In considering a motion to dismiss pursuant to Rule 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims." Id. (citations omitted). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995). Under a Rule 12(b)(6) motion, factual challenges to a complaint have no bearing on the legal sufficiency of the allegations. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

## DISCUSSION

I.   Count 1:   31 U.S.C. § 3729(a)(1): knowingly making, or causing to be made, a false or fraudulent claim for payment from the government.

Plaintiffs have withdrawn this claim. (Dkt. No. 29, p. 2). As such, the Court will consider the motion to dismiss only as to count two.

II.   Count 2: 31 U.S.C. § 3729(a)(7): knowingly makes, uses, or causes a false record or statement to avoid an obligation to pay money to the government.

State Farm moves to dismiss Count Two arguing the Amended Complaint again fails to allege a violation of § 3729(a)(7). In particular, State Farm contends the Plaintiffs have failed to show that State Farm made or used false statements in an effort to avoid an obligation it owed the government. The Plaintiffs maintain that their amended complaint properly alleges an indirect, reverse false claim violation of the FCA in that State Farm knowingly used, or caused to be used, a false statement to avoid paying an obligation owed to the government. (Dkt. No. 29, p. 3).

"Title 31 U.S.C. § 3729(a)(7), the reverse false claims provision of the FCA, punishes anyone who 'knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" United States v. Bourseau, 531 F.3d 1159, 1164 (9th Cir. 2008). Section 3729(a)(7) is designed to address those avoiding repayment to the government, rather than those submitting false or fraudulent claims. See 31 U.S.C. § 3729(a) (1-7) (unlike other subsections, subsection (7) does not include the term "claim"); United States v. Neifert-White Co., 390 U.S. 228, 233 (1968) (stating the FCA goes to all fraudulent *attempts* to cause the government to lose money) (emphasis added); United States *ex. rel.* Huangyan Import & Export Corp.v. Nature's Farm Products, Inc., 370 F.Supp.2d 993, 998 (N.D. Cal. 2005) (stating Congress amended the FCA to include "reverse false claims" because, as written, the FCA only addressed affirmative demands on the treasury, but omitted those seeking to avoid payment). A violation of § 3729(a)(7) of the FCA occurs when the offender "knowingly makes..or uses..a false record or statement to conceal, avoid, or decrease an obligation to pay..the government." 31 U.S.C. § 3729(a)(7). In order to establish a violation under § 3729(a)(7), a plaintiff must show that: 1) an existing obligation was owed the government at the time the fraudulent statements were made, and 2) there is a causal connection between the false statements and the loss incurred by the government. 31 U.S.C. § 3729(a)(7). A defendant must have made the false statements in a knowing attempt to avoid its duty. 31 U.S.C. § 3729(a)(7) and

(b).  What is dispositive for a "reverse false claim" is that false statements were made, in an effort to avoid an obligation already owed the government.  See Nature's Farm., 370 F.Supp.2d at 996.

Here, the Plaintiffs allege the false statement made to the government was St. Luke's request for payment from Medicare.[2]  (Dkt. No. 29, p. 7).  This statement was false, the Plaintiffs contend, because State Farm was the primary insurance on these expenses and State Farm knew it was responsible for payment of the St. Luke's bill as evidenced by the fact that State Farm had already paid for Mr. Mason's bill to the doctor who performed the surgery. (Dkt. No. 29, p. 7).  State Farm argues St. Luke's claim to Medicare was not fraudulent and that State Farm did not act with the requisite "knowledge" of any false statement.  Plaintiffs counter that State Farm had a statutorily imposed obligation to make a reasonable and prudent inquiry to ascertain whether a claim is false and to reimburse the government. (Dkt. No. 29, pp. 9-10).  Plaintiffs allege State Farm had the invoice for the surgery that indicated the surgery took place at St. Luke's and, because State Farm is an experience medical insurance provider, it knew the doctor's bill would be submitted for payment separate from the hospital bill.  Thus, because State Farm had already paid the doctor for the surgery performed at St. Luke's, Plaintiffs argue that State Farm was obligated to pay the bill and knew or should have known that it had not yet paid the bill due to St. Luke's and allowing Medicare to pay the bill was fraudulent. (Dkt. No. 29, p. 9).  State Farm maintains that St. Luke's had a right to seek contingent payment from Medicare and, therefore, St. Luke's claim was not a false claim upon which State Farm could have used to avoid payment. (Dkt. No. 32, p. 2).  Further, State Farm disputes that it knew St. Luke's had billed Medicare or that Medicare had paid the bill and that the allegation that it should have known is unsupported.  State Farm argues its obligation to reimburse Medicare arises if and when the liability of State Farm as the primary payer is established not, as Plaintiffs argue, when the insurer makes a partial payment. (Dkt. No. 32, p. 4).  Thus, State Farm maintains it had no duty to pay at the time St. Lukes submitted its claim.

---

[2] This is the only false statement asserted by the Plaintiffs in their response to the motion to dismiss.  (Dkt. No. 29).  This is distinct from the Plaintiffs' position on the prior motion to dismiss where they pointed to two additional allegedly false statements.  (Dkt. No. 24, p. 15).  On the prior motion to dismiss, this Court rejected the Plaintiffs' allegations as to the St. Luke's 2004 claim being a false statement.  (Dkt. No. 24, p. 15).

MEMORANDUM ORDER
S:\Orders\Orders09\State_Farm_dismiss.wpd      5

### A.     Whether the statement was false.

To allege a violation of the false claims provision of the FCA, the Plaintiffs must state facts sufficient to allege that a claim was "false" or "fraudulent" within the meaning of the FCA. "False or fraudulent" is not defined in the FCA. "Rather, courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law." Bourseau, 531 F.3d at 1164 (citing cases). Courts construing the terms have interpreted a false or fraudulent claim as "one aimed at extracting money the government would not have otherwise paid." Mike v. Straus, 274 F.3d 687, 696 (2d Cir. 2001); see also United States v. Neifert-White Co., 390 U.S. 228, 232-33 (1968) (finding false claims an attempt to cause the Government to pay out sums of money); United States *ex rel.* Hopper v. Anton, 91 F.3d 1261, 1267 (9th Cir. 1996) (finding fraud when knowingly presenting a claim to get money not otherwise entitled to).

Violations of laws, rules, or regulations alone do not create a false claim under the FCA. Hopper, 91 F.3d at 1266. The FCA is much narrower and requires the regulatory violation to be accompanied by a knowingly false or misleading representation. Id. A claim can also be "false" within the meaning of the FCA when it complies with the applicable statute or regulation, but where false information was used to receive the benefit. See United States v. Mackby, 261 F.3d 821, 826 (9th Cir. 2001) (holding defendant liable for using false group name to receive otherwise correct Medicare benefits); Peterson v. Weinberger, 508 F.2d 45, 52 (5th Cir. 1975) (holding defendant liable under the FCA although services billed to Medicare were performed by qualified people, where the claim forms falsely certified that the defendant was the provider).

Here, the false statement relied on by Plaintiffs is the claim made by St. Luke's to Medicare. To meet their burden, Plaintiffs must allege that the claim submitted by St. Luke's to Medicare in 2004, was used by State Farm in an attempt avoid an existing duty to pay and/or reimburse Medicare for the funds it paid to St. Luke's. The Complaint fails to do this. The only allegedly false statement relied upon by the Plaintiffs in their Amended Complaint is the 2004 St. Luke's

claim to Medicare.[3] The Court held in the prior Order that "this 'false statement' does not qualify to state a reverse false claim for two reasons. First, Plaintiffs have not alleged facts showing that St. Luke's claim to Medicare in 2004 was false [because they failed to show how St. Luke's misrepresented the facts to Medicare in order to get the contingent payment]. Second, the claim to Medicare was made before State Farm had a duty to reimburse Medicare, it could not have been made when an existing obligation was owed." (Dkt. No. 24, p. 15). The Court finds the same is true of the allegations in the Amended Complaint. Plaintiffs have failed to show that St. Luke's claim to Medicare misrepresented the facts or was fraudulent.

Further, the Court previously determined the fact that St. Luke's requested payment from Medicare as the secondary insurer was in compliance with the Medicare Secondary Payer ("MSP") Statute, and because Plaintiffs failed to show that St. Luke's used false information to receive the payment, the false claim element was not adequately pled. (Dkt. No. 24, pp. 8-9). Likewise here, the Amended Complaint does not allege that St. Luke's used false or misleading representations in order to receive the payment from Medicare or that State Farm was able to use the St. Luke's claim fraudulently to avoid payment or reimbursement to Medicare. Just the opposite, St. Luke's rightfully submitted its claim to Medicare under the MSP.

The MSP governs the St. Luke's claim to Medicare. 42 U.S.C. § 1395(y)(b). In 1980, Congress amended the MSP to make Medicare the secondary, rather than primary insurer for eligible parties, and gave Medicare the power to recoup payments from primary insurers. United States v. Baxter International, Inc., 345 F.3d 866, 875 (11th Cir. 2003). Under the MSP, if payment is expected by the primary insurer, then Medicare is not expected to pay. 42 U.S.C. §

---

[3] Unlike the initial Complaint that relied on two additional false statements, here, Plaintiffs rely only on St. Luke's claim to Medicare in 2004 for the contingent payment. (Dkt. No. 29, p. 7). The two additional false statements considered previously were: 1) the list of payments made by State Farm on Mason's medical claim, dated May 2005, and 2) copies of internal State Farm records detailing various claims from medical providers, dated September 2005. (Compl. ¶¶ 22, 24). The Court concluded that those statements "were made after State Farm's duty to reimburse Medicare arose and they are allegedly false because State Farm did not provide the St. Luke's surgery bill or acknowledge its duty to pay it under Mr. Mason's policy. (Compl. ¶ 24). The Court determined that State Farm misrepresented those facts by supplying records to Plaintiffs that fail to acknowledge an obligation that State Farm is allegedly liable for. (Dkt. No. 24, p. 15). The facts in the additional statements are again alleged in the Amended Complaint but are not relied upon by Plaintiffs as the false statement making up Count Two. Even if these two statements were to be applied to Count Two, the motion to dismiss would still be granted. There are no facts alleged that these two statements caused Medicare to pay St. Luke's bill as they were made after Medicare paid the bill.

1395(y)(b)(A). However, if payment by the primary insurer is not expected promptly, then medical providers may request a contingent payment for covered services, even when another source is obligated to pay. 42 U.S.C. § 1395(y)(b)(B). Promptly is defined to mean "payment within 120 days after receipt of a claim." 42 C.F.R. § 411.21. Applying the MSP here, St. Luke's was entitled to request a contingent payment from Medicare, even though State Farm is the primary insurer because State Farm had questioned coverage, declined to pay other surgery-related bills that had been submitted, and was investigating Mr. Mason's claim. (Dkt. No. 32, p. 3). The Court finds St. Luke's claim was not a false statement. Accordingly, the motion to dismiss is granted.

### B. Whether false statements were made or used when State Farm owed an existing obligation to reimburse Medicare.

Reverse false claims require false statements to be made while there is an existing obligation to repay the government, which is created by statute, regulation, or contract. American Textile Manufacturers Inst., Inc., v. The Limited, Inc., 190 F.3d 729 (6th Cir. 1999); United States v. Q Int'l Courier, Inc., 131 F.3d 770 (8th Cir. 1997); Nature's Farm, 370 F.Supp.2d at 996. A plaintiff must show the obligation owed is mandatory, rather than discretionary. Nature's Farm, 370 F.Supp. 2d at 1000. To meet this element, the Amended Complaint must allege that State Farm had a mandatory duty to reimburse Medicare and that State Farm made or used false statements while this duty was in existence. State Farm's obligation to reimburse Medicare arises, if at all, under the MSP where "it is demonstrated that[the] primary plan has or had a responsibility to make payment with respect to the item or service." 42 U.S.C. § 1395y(2)(B)(ii). "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release..of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Id.

The Court's previous Order concluded that the Complaint sufficiently plead facts that could support a finding that State Farm had a duty to reimburse Medicare if liability as the primary insurer is proven. (Dkt. No. 24, p. 14). There as here, Plaintiffs allege that State Farm is liable for reimbursing Medicare because State Farm was responsible under the insurance policy for all reasonable medical expenses incurred by Mr. Mason and, because State Farm agreed to pay the

surgery bill as a result of the independent medical exam. (Compl. ¶¶ 15, 19), (Dkt. No. 29, p. 7). However, the Court's prior conclusion was based on the Plaintiffs' reliance on two 2005 false statements made by State Farm. (Dkt. No. 24, p. 15). The Plaintiffs' Amended Complaint no longer assert the 2005 statements as the basis for their claim and, instead, only rely on the 2004 St. Luke's claim. The Court previously held, however, the St. Luke's claim fails to qualify as a reverse false claim because it was made before State Farm had a duty to pay. (Dkt. No. 24, p. 15).

The obligation to pay arises under the precepts of the MSP wherein Congress has specifically given the government authority to enforce repayment of claims. Under the MSP, if the primary insurer does not reimburse Medicare, then the government has significant power under the MSP to recoup conditional Medicare payments from primary sources. See 42 U.S.C. §1395(y)(2)(B)(iii); see Baxter, 345 F.3d at 877 (stating that Congress has repeatedly clarified and augmented the Government's power, as the primary enforcer, to recover contingent payments). Any duty State Farm may have had or has to reimburse Medicare did not arise at the time St. Luke's submitted its claim to Medicare in 2004. (Dkt. No. 24, p. 15). Because the St. Luke's claim is now the only statement Plaintiffs rely upon for their FCA claim, the Court finds the Plaintiffs' have failed to allege facts which could prove State Farm's duty imposed on it by statute to reimburse Medicare existed at the time St. Luke's made the claim to Medicare and/or Medicare paid the claim. Whether or not State Farm is now liable to repay Medicare is dictated by the MSP, not the FCA. (Dkt. No. 32, p. 3). In addition, as determined above, the Plaintiffs have not alleged facts showing that St. Luke's claim to Medicare in 2004 was a false or fraudulent statement.

### C. Whether State Farm knowingly made or used false statements that caused the government to not be reimbursed.

To state a reverse false claim, a defendant must knowingly make or use a false statement that caused the government to lose money. To sufficiently plead a violation of the FCA, Plaintiffs must allege facts showing that State Farm made or used a false statement in order to avoid repaying Medicare and that this was done knowingly.

1. <u>Knowingly</u>

MEMORANDUM ORDER
S:\Orders\Orders09\State_Farm_dismiss.wpd                    9

Knowledge exists when a defendant actually knew or should have known, but deliberately ignores information that would have otherwise informed him of his duty. Lee v. SmithKline, 245 F.3d 1048, 1053 (9th Cir. 2001). "Under the FCA, 'knowing' and 'knowingly' mean that a person, with respect to information-(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001) (citing 31 U.S.C. § 3729(b) (1994), United States ex rel. Hochman v. Nackman, 145 F.3d 1069, 1073 (9th Cir. 1998)). "The requisite intent is the knowing presentation of what is known to be false." Id. (citing United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991)). "'Known to be false' does not mean scientifically untrue, but 'a lie.'" Id. (citing United States ex rel. Anderson v. N. Telecom, Inc., 52 F.3d 810, 815-16 (9th Cir. 1995) (quoting Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir.1992)) (internal quotation marks omitted)).

The Amended Complaint alleges "State Farm was aware that it had not paid St. Luke's directly for those services, nor reimbursed Medicare for the payment Medicare made in 2004." (Dkt. No. 25, ¶ 28).[4] The new allegations[5] in the Amended Complaint to support this statement include:

26. As a medical insurance provider, State Farm is aware that standard billing procedures for medical services provided at a hospital will result in at least two bills, one from the doctor providing the service and another from the hospital itself.

27. State Farm was aware that Mason's surgery was performed at St. Luke's because it had in its possession Dr. Verst's June 30, 2004 invoice, which listed "St. Lukes Wood River Medical Center 100 Hospital Dr. Ketchum, Id 83340" in the space provide [sic] for the "name and address of the facility where services were rendered."

28. State Farm was aware that it had not paid St. Luke's directly for those services, nor reimbursed medicare for the payment Medicare made in 2004.

---

[4] This is not a new allegation from the Complaint. (Dkt. No. 1). It is simply separated out from the previous paragraph.

[5] The paragraphs quoted from the Amended Complaint are newly added with the exception of paragraphs 27 and 28 which were modified or simply set out as a separate allegation from the way they were presented in the initial Complaint.

> 30. State Farm was in possession of Mason's medical records, and was aware of his Medicare eligibility and listed Medicare as an insurance provider for Mason.
>
> 31. As a medical insurance provider, State Farm knows or should know of its ongoing obligation to reimburse Medicare pursuant to its obligation as a primary insurer under the Medicare Secondary Payer Statute (42 U.S.C. § 1395y(b)(2)).
>
> 34. As a medical insurance provider, State Farm has an affirmative duty to familiarize itself with the requirements for reimbursing Medicare for payments it made when State Farm was the primary insurer and to ensure that its business is run in accordance with these requirements.
>
> 35. Because State Farm was aware that the surgery was performed at St. Luke's, and that St. Luke's had its own bill, and that Mason was a Medicare beneficiary, State Farm had knowledge that Medicare had issued a payment on Mason's behalf for the surgery and therefore knowingly avoided its duty to reimburse Medicare pursuant to the Medicare Secondary Payer Statute. State Farm did this with actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; or acting in reckless disregard of the truth or falsity of the information.
>
> 38. At the time State Farm recognized its obligation to pay for Mason's medical treatment, it was in violation of the Fair Claims Act for failing to reimburse Medicare.

(Dkt. No. 25). In Count Two of the Amended Complaint, the allegations add language regarding State Farms' knowledge:

> 51. Each instance where Defendant State Farm was the primary insurer and knowingly failed to reimburse Medicare for payments it made constituted an indirect reverse false claim under 31 U.S.C. § 3729(a)(7).
>
> 52. Each instance where Defendant State farm was the primary insurer and made or used or caused to be used a false statement or record to conceal or avoid its obligation to pay a claim and allowed such claims to be paid by Medicare, or concealed or avoided its obligation to reimburse Medicare for payments made, State Farm acted with actual knowledge of the information; acted in deliberate ignorance of the truth or falsity of the information; or acted in reckless disregard of the truth or falsity of the information.

(Dkt. No. 25, p. 11). The Court stated in the previous Order that "[n]owhere does the Complaint allege that State Farm actually knew that St. Luke's billed Medicare for Mason's surgery or that Medicare made a contingent payment. Knowledge that Mason is a Medicare beneficiary and that State Farm might be liable for Mason's surgery, does not equate to knowledge that Medicare payed for a specific surgery. Additionally...the alleged facts also do not support the inference that State

Farm should have known that St. Luke's billed Medicare for the surgery but deliberately ignored the information. Thus, the Complaint fails to allege that State Farm has the requisite knowledge to trigger FCA liability." (Dkt. No. 24, p. 17). The Court further added in a footnote that "there are no alleged facts, nor inferences that lead to the conclusion that State Farm had a duty to seek out claims it might owe, but has not been informed of." (Dkt. No. 24, p. 17 n. 8).

Plaintiffs now argue State Farm had a duty to make a reasonable inquiry to ascertain the true and accurate basis of the claim and that it was grossly negligent in failing to do so in violation of the FCA. (Dkt. No. 29, p. 9). The Amended Complaint alleges that "[a]s a medical insurance provider, State Farm has an affirmative duty to familiarize itself with the requirements for reimbursing Medicare for payments it made when State Farm was the primary insurer and to ensure that its business is run in accordance with these requirements." (Dkt. No. 25, ¶ 34). Thus, the allegations in the Amended Complaint are that State Farm knew: Mr. Mason's surgery was performed at St. Luke's by virtue of the invoice it had paid to Dr. Verst, State Farm was the primary insurer, State Farm had not paid St. Luke's, Mr. Mason qualified for Medicare, and State Farm did not reimburse Medicare. Id. Arguably, these new allegations give rise to a reasonable inference that, based on State Farm's experience in the medical insurance industry, it knew there would be a second separate bill submitted from St. Luke's that it had not paid.

Again, however, the Amended Complaint does not allege that State Farm knew Medicare had made the payment to St. Luke's or that State Farm knew it had an existing duty to repay Medicare. Moreover, as previously determined in this Order, the allegations, even if true, do not show that State Farm had an existing duty to reimburse Medicare at the time St. Luke's submitted its claim in 2004 and the St. Luke's claim was a false statement made or used by State Farm. Plaintiffs' contention that the MSP places an affirmative duty on State Farm to reimburse the government by virtue of its language that the payment was "conditioned on reimbursement" is without support. (Dkt. No. 29, p. 10) (quoting 42 U.S.C. § 1395y(b)(2)(B)(I)). Whether or not State Farm is liable to reimburse the government is controlled by the MSP.[6] Any repayment

---

[6] The Court's Order on the first motion to dismiss expressed no opinion on whether State Farm was actually liable to reimburse under the MSP. (Dkt. No. 24, p. 14). The Court further noted that under the MSP, the obligation to reimburse Medicare arises when the primary insurer is demonstrated liable, not when it is informed of its duty to pay.

obligations under the MSP do not make up a violation of the FCA.  As such, the motion to dismiss will be granted.

### 2. Causation

Finally, Plaintiffs have not alleged facts that the false statement caused the government to lose money.  The connection between the alleged false statement and State Farm failing to pay Medicare is lacking.  The Amended Complaint fails to allege facts that State Farm used St. Luke's claim to avoid repayment to the government.  The allegations in the Amended Complaint are that State Farm disputed its obligation to pay the medical expenses, eventually paid some of the medical bills but did not pay the St. Luke's bill, and State Farm knew Mr. Mason was eligible for Medicare benefits.  These allegations do not give rise to the inference that State Farm knew Medicare had paid the St. Luke's bill let alone that State Farm used the St. Luke's claim to cause Medicare to pay the bill and/or to avoid reimbursement to the government.

 The Ninth Circuit addressed the causation requirement in Hopper v. Anton, where it found that a plaintiff had failed to state an FCA claim when she could not show that the government used the false statements to distribute a benefit.  91 F.3d 1261, 1266 (9th Cir. 1996).  Liability is only established when a plaintiff can demonstrate a causal connection between the false statements and the government not receiving payment.  See Hopper, 91 F.3d at 1266 (finding false statements did not trigger government loss because the statements were not used by government to make payments); (United States ex rel. Koch v. Koch Indust., Inc., 57 F. Supp. 2d 1122, 1129 (N.D. Okla. 1999) (finding that false statements on oil leases, which were not given to the government, nonetheless caused the government to lose money because the oil leases were used to reduce money owed the government); United States  ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F.Supp.2d 1017, 1049 (S.D. Tex. 1998) (holding claim sufficiently pled when alleged false statements were used to avoid an obligation to pay money to United States).  A defendant must have made the false statement for the purpose of avoiding payment.  Allison Engine Co., Inc., v. United States ex rel. Sanders, 128 S.Ct. 2123, 2130 (2008).

---

(Dkt. No. 24, p. 14).

There are no alleged facts that State Farm made or used St. Luke's claim to cause Medicare to not be reimbursed. The St. Luke's claim, first of all, is not fraudulent. Second, the statement cannot be used by State Farm to avoid its obligation to reimburse the government or to avoid payment. In sum, the Court finds that on Count Two, Plaintiffs have failed to allege facts showing that St. Luke's claim was a false statement used by State Farm to avoid reimbursement to Medicare when it had an existing obligation to reimburse the government. Therefore, Defendant's motion to dismiss Count Two for failure to state a claim is granted.

III.     Whether Further Leave to Amend Should be Granted:

Rule 15(a)(2) states that leave to amend should be freely granted when "justice so requires." Fed. R. Civ. P. 15(a)(2). Ordinarily, this means that leave to amend should be granted unless the court determines that the "pleading could not possibly be cured by the allegation of other facts." SmithKline, 245 F.3d at 1052. Here, because Plaintiffs were already given leave to amend their Complaint once and have failed to cure the complaints deficiencies, no further leave will be granted.

**ORDER**

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** State Farm's Motion to Dismiss for Failure to State a Claim (Dkt. No. 27) is **GRANTED** without prejudice and without leave to amend. This action is **DISMISSED IN ITS ENTIRETY**.

DATED: **August 13, 2009**

Honorable Edward J. Lodge
U. S. District Judge